I am unable to concur in the majority opinion with reference to the validity of the codicil to the will of the testator.
This court has always recognized the rule that the desires of a testator as to the disposition of his property after his death, as expressed in his will and any codicil thereto, should be carried out; that a testator is presumed to have had the capacity to make his will and any codicil; and that this presumption must prevail wherever such capacity is brought into question by a contest, unless and until, by the force of clear, cogent, and convincing evidence produced at the trial of the contest, it must be held that the testator, at the time he made and executed the questioned will or codicil, did not have the mental capacity so to do.
A very clear and comprehensive statement of the law which must be our guide in reviewing a will contest case is set forth in Inre Bottger's Estate, 14 Wn.2d 676, 129 P.2d 518, in which we said, p. 685:
"The rules as to what constitutes testamentary capacity have been stated, and the earlier cases collected, in a number of our recent decisions: In re Larsen's Estate, 191 Wn. 257,71 P.2d 47; Dean v. Jordan, 194 Wn. 661, 79 P.2d 331; In reSchafer's Estate, 8 Wn.2d 517, 113 P.2d 41; In reMiller's Estate, 10 Wn.2d 258, 116 P.2d 526.
"Those cases hold that a person is possessed of testamentary capacity if at the time he assumes to execute a will he has sufficient mind and memory to understand the transaction in which he is then engaged, to comprehend generally the nature and extent of the property which constitutes his estate and of which he is contemplating disposition, and to recollect the objects of his bounty. This is the standard by which courts must measure the facts of each case in which it is contended that an instrument offered or accepted as the will of a decedent was executed at a time when the testator lacked capacity to make a valid testamentary disposition of his property. *Page 654 
"Furthermore, the cases above cited announce certain principles and lay down certain rules as guides to courts in determining the allocation of the burden of proof in such matters. The right to dispose of one's property by will is a valuable one, assured by law. Consequently, where a will, rational on its face, is shown to have been executed in legal form, the law presumes that the testator had testamentary capacity and that the will speaks his wishes. If the will has been probated and is thereafter contested, the burden of proving its illegality is, by statute (Rem. Rev. Stat., § 1387 [P.C. § 10019]), imposed upon the person contesting such probation, and, according to the above decisions, that burden can be met only by producing clear, cogent, and convincing evidence of the invalidity of the will."
Each case of this kind must be decided from the standpoint of its own factual situation, and, in this respect, no one case is of much assistance in deciding another; but the guiding principles above set forth do apply in all such cases.
The majority opinion quotes excerpts from the testimony of witnesses who contacted the testator during his last illness and who saw and observed him prior to, at the time of, and subsequent to, the execution of the codicil to his will, the validity of which has been attacked. This testimony relates to the acts and conduct of the testator subsequent to the time when he was stricken. Opinion evidence was submitted as to his mental capacity at the time the codicil was executed, some of which was conflicting. One of the principal factors which, it seems to me, prompted some of the witnesses to believe that the testator lacked mental capacity was his failure to make known to those attending him his natural needs; but I think it is justifiable to infer that such failure was because of his paralyzed condition having disabled him from being aware that they existed or was due to his natural diffidence to make them known to female attendants, so too much weight should not be given to such testimony as proof of lack of mental capacity. Other similar conclusions were, no doubt, affected by the testator's physical rather than his mental condition.
The testator was unable to speak as a result of the paralysis so could not make manifest his mental state by vocal *Page 655 
expression. He had to do so by motions of his head or by limited gestures. Notwithstanding the testimony, principally opinions which seem to be to the contrary, I am of the view that the evidence as a whole indicates that the testator had a definite objective in his mind which was conceived by him after he had been stricken, and that was that he wanted Darrel Farley to have two of the five quarter sections of land he owned in Grant county.
It may be that, inasmuch as he first said after he was stricken that he had made a satisfactory disposition of his property in the event of his death, the thought of his leaving the land to Darrel Farley was suggested by Roy Farley, but it was not shown that there had been any undue influence exercised. The outstanding thing in the record is that, when Mr. Hamblen, an attorney who was a stranger to both the testator and the Farleys, was called to prepare a codicil to the will, the testator, even though he had very limited means of conveying his thoughts, did, in fact, through questions propounded to him, definitely convey to Mr. Hamblen the knowledge that he owned five quarter sections of land in Grant county, that he wanted to devise two of them to Darrel Farley and three of them to his niece, who was one of the objects of his bounty in his will, and that Darrel Farley was to have the right to select which two of the five quarters he desired. This is not a case where the attorney had been informed of the supposed wishes of the testator by some third party, had drawn the will accordingly, and the testator had executed it without the attorney having interrogated him to ascertain whether he then had a full realization of the property he owned and of the objects of his bounty, as appears in some of our cases. But here, the information came directly from the testator to the attorney who drew the codicil. It seems to me that the testator must have had mentality when he was able to convey with his limited physical means to Mr. Hamblen all that he did so as to enable him to prepare the codicil. I feel certain that the attorney became convinced that the testator had the mental capacity to formulate his wishes *Page 656 
and knew and comprehended fully what he was doing, or he would not have prepared and submitted the codicil for execution at the time.
Mr. Hamblen did testify that he did not know whether the testator had the quantum of understanding necessary to make a valid codicil to his will, but I think this has been the experience of many lawyers who have drawn wills and codicils for people towards the close of a last illness. Under such circumstances, the exact mental state of a testator cannot be made known to the attorney; but, if the testator conveys to him the knowledge of what property he wishes to devise and to whom he wants it devised, he is justified in believing there is the required mental capacity present and to draw and assist him in executing the will or codicil accordingly.
Neither Mr. Hamblen nor anyone else similarly situated would necessarily have the testimonial knowledge that such capacity existed, but, upon the whole evidence presented, a trier of fact would be justified in reaching the conclusion that there was the requisite mental capacity when it appeared that the testator met the test we have adopted in our cases.
The testimony of the physician, upon which the majority places much reliance, was of a highly partisan character, and it is quite clear that the testimony of one of the nurses, who gave it as her "belief" that the testator was not of sound mind when he executed the codicil, was influenced by the physician, as she finally admitted that nothing had occurred to her that the testator did not know what he was doing when he executed the codicil until the physician talked to her a couple of days after the testator died.
The trial judge who made careful inquiry as to the mental capacity of the testator when the will and codicil was submitted for probate and who saw and heard a number of witnesses testify and the other trial judge who saw and heard other witnesses testify and who read and considered the testimony of the witnesses at the hearing when the will was submitted for probate, both reached the conclusion that the testator had the required mental capacity to make and *Page 657 
execute the codicil. On appeal, these conclusions of fact are entitled to great weight, and it seems to me that, when we do so weigh and consider the evidence ourselves, we not only cannot say that the lack of testamentary capacity is established by clear, cogent, and convincing evidence, but, on the contrary, that evidence which carries with it the greater convincing force also shows affirmatively that the testator, when he executed the codicil, did have the requisite mental capacity prescribed by this court in its many decisions on the subject.
It would be an idle thing indeed to state the rules, as we have so many times, with reference to the right of a person to dispose of his property as he desires, the presumptions surrounding him with reference to mental capacity, the burden of proof to overcome these presumptions and the evidence in support of them, and the quantum of proof necessary to overturn a will or codicil, if we do not apply them; and, if a codicil can be defeated in the face of the record in this case, then one cannot be safely made after a person has been stricken because partisan opinion and belief can often be presented that the testator did not know what he was doing. In this case, we have before us a very simple codicil relating to one limited subject and requiring no great mental effort in determining its disposal, as would be the case of a lengthy or complicated will or codicil, and the careful supervision by a competent and highly reputable attorney at law in its execution.
The judgment should be affirmed.
ROBINSON and MALLERY, JJ., concur with GRADY, J.